Edward Chang (SBN 268204)
echang@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff,<br><br>        v.<br><br>ELEGANT SOLUTIONS, INC., et al.,<br><br>                Defendants. | Case No. 8:19-cv-01333-JVS (KESx)<br><br>**STATUS REPORT OF RECEIVER**<br><br>JUDGE:   Hon. James V. Selna<br>CTRM:    10C |

Thomas W. McNamara, as Court-appointed receiver ("Receiver"), submits this report of receivership activities for the period of July 19, 2019 to January 13, 2020.

## I.

## INTRODUCTION

On July 8, 2019, this Court entered a Temporary Restraining Order and appointed Thomas W. McNamara as temporary receiver of the Receivership Entities[1] (ECF No. 23) ("TRO"). The Receiver filed his Preliminary Report on July 18, 2019 (ECF No. 54), which described in detail the initial implementation of the receivership, summarized Defendants' operations and finances, and documented the Receiver's conclusion that the Receivership Entities could not be operated lawfully and profitably going forward. The Receiver's appointment was confirmed, and the temporary designation removed, by the Order Entering Stipulated Preliminary Injunction entered July 17, 2019 (ECF No. 52).

Since the entry of the Preliminary Injunction, the Receiver's primary focus has been on winding down the business, addressing outstanding issues, vacating the office and storage facilities, liquidating Receivership Entities' assets, including office equipment and vehicles and coordinating with the parties as needed.

///
///
///

---

[1] Receivership Entities include Corporate Defendants (Elegant Solutions, Inc., also d/b/a Federal Direct Group, Trend Capital Ltd., also d/b/a Mission Hills Federal, Dark Island Industries, Inc., also d/b/a Federal Direct Group and Cosmopolitan Funding Inc., Heritage Asset Management, Inc., also d/b/a National Secure Processing, Tribune Management, Inc., also d/b/a the Student Loan Group), as well as any other entity that has conducted any business related to Defendants' marketing of Debt Relief Services, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant. On August 5, 2019, the Receiver notified the parties that RCC America LLC is a Receivership Entity. To date, no one has filed a motion challenging the Receiver's determination.

# II.

# SUMMARY OF RECEIVERSHIP ACTIVITIES

## A. Receivership Entities' Assets

On August 14, 2019, the parties stipulated to an order authorizing the Receiver to liquidate or abandon Assets of the Receivership Entities located at 3 Studebaker, Irvine, CA (the "Receivership Site"), sell or return certain leased vehicles, pay out the net proceeds of consigned vehicles sold before the entry of the TRO, and vacate the Receivership Site. *See* ECF No. 57. The Court entered an order granting the stipulation later that same day. *See* ECF No. 58. Since then, and as authorized by the Court order, the Receiver:

- Preserved all business records, including hard copy documents (some 450 bankers boxes) and electronic materials (i.e., hard drives, servers, etc.), which were located at the Receivership Site and in leased storage units and placed them into storage controlled by the Receiver;[2]
- Engaged an estate sale company, which conducted a sale at the Receivership Site in mid-September 2019, netting approximately $11,000 from the sale of office equipment and furniture;
- Sold other Assets of the Receivership Entities, including industrial fans, hydraulic lifts, etc., receiving approximately $12,000;
- Returned a trove of luxury vehicles leased by the Receivership Entities after determining they had no equity, specifically: two 2019 Rolls-Royce Ghosts, a 2019 Rolls-Royce Dawn, a 2019 BMW M850i xDrive Coupe, a 2017 BMW 328d xDrive Sports Wagon, and a 2019 Mercedes Benz G63;

---

[2] The Plaintiff Federal Trade Commission and Defendants were kept informed of the status of documents and electronic materials collection each step of the way and both parties had the opportunity to inspect the Receivership Site and Receivership Entities' Documents prior to the records being boxed up. Then again, prior to sending the documents and electronic materials to storage both parties were informed of the plans and provided the opportunity for input.

- Remitted the net proceeds from the sale of the 1957 Chevrolet Bel Air ($45,000), 1957 Chevrolet Sedan Delivery ($45,000), and 1967 Chevrolet Corvette ($120,435) to the respective owners who had consigned cars to one of the Receivership Entities;
- Abandoned assets which the Receiver was unable to profitably liquidate; and
- Vacated the Receivership Site on December 1, 2019.[3]

Defendants stipulated to the sale of a 2018 Apache Trailer, 1957 Cadillac Coupe de Ville, 1971 Chevrolet Pickup, 2006 Ford E250 Van, and a 1997 Ford F350 Pickup; the Receiver later received authority to sell a 2019 GMC Sierra 1500 Denali, 2018 Cadillac Escalade ESV, 2018 Chevrolet Camaro ZL1, 2016 GMC Sierra K2500 Denali, 1997 Chevrolet C3500 Pickup, 1989 Chevrolet Blazer, 1989 Toyota Land Cruiser, 1981 Pontiac Firebird Trans Am, 1971 Pontiac GTO, 1968 Ford Mustang, and a 1964 Plymouth Belvedere. The Receiver has now sold or otherwise disposed of all but two of the vehicles. Below is a chart summarizing the vehicles that sold, the sale date and the sale price.

| Vehicle | Sale Date | Sale Price |
|---|---|---|
| 2018 Apache Trailer | Sept. 19, 2019 | $6,500 |
| 1957 Cadillac Coupe de Ville[4] | Aug. 15, 2019 | $23,000 |
| 1989 Chevrolet Blazer | Jan. 8, 2020 | $16,000 |
| 1997 Ford F350 Pickup | Sept. 11, 2019 | $8,000 |
| 1968 Ford Mustang | Sept. 25, 2019 | $17,000 |
| 2019 GMC Sierra 1500 Denali | Oct. 8, 2019 | $55,000 |

---

[3] Before vacating, the Receiver allowed Individual Defendants to retrieve four vehicles stored at the Receivership Site, including 1972 Chevy C10, 1964 Ford Mustang, 1991 Mercedes Benz 560SEC, and 1994 Mercedes Benz S420.

[4] At the time of initial entry, Defendants had already agreed to have Mecum Auction, Inc. sell the 1957 Cadillac Coupe de Ville at a no reserve auction with 5% commission. At auction, the vehicle sold for $23,000, resulting in net sale proceeds of $21,850.

| Vehicle | Sale Date | Sale Price |
|---|---|---|
| 2016 GMC Sierra K2500 Denali | Sept. 5, 2019 | $45,000 |
| 1981 Pontiac Firebird Trans Am | Oct. 7, 2019 | $27,500 |
| 1989 Toyota Land Cruiser | Sept. 30, 2019 | $12,200 |

To date, the gross proceeds from the sale of the vehicles is $210,200. The net proceeds is less because it was necessary to pay an outstanding loan balance, commissions, transportation costs, fees, and other expenses.

The 1971 Chevrolet Pickup, 1997 Chevrolet C3500 Pickup, and a 1971 Pontiac GTO were in various states of disrepair at a third-party body shop in Santa Fe Springs to which Defendants had sent the vehicles. After reviewing the amounts allegedly owed to the body shop, the amount of time and money required to finish the vehicles, and the potential future value after repairs and restoration, the Receiver determined that it was not in the best interest of the receivership to expend further funds and released any claims to these vehicles.

After determining that the 2018 Cadillac Escalade ESV and 2018 Chevrolet Camaro ZL1 were actually leased by the Receivership Entities, the Receiver reviewed the payoff amounts and determined there was no equity in the vehicles. Accordingly, they were returned to the lessors.

The only vehicles left to be sold include the 1964 Plymouth Belvedere, which has been modified to a track-only vehicle (i.e., not street legal), and a 2006 Ford E250 van.

### B. Consumer Notice

In order to notify consumers of the underlying action and the receivership, the Receiver provided notice to customers via email, responded to hundreds of customer inquiries, posted notices on the Receivership Entities' websites, and updated the telephone greetings.

///

## III.

## RECEIVERSHIP ACCOUNTING

Attached as Exhibit A is a Receipts and Disbursements Summary from July 30, 2019 through January 13, 2020. During this time period, receipts were $3,721,399.92, primarily comprised of funds from accounts frozen under the provisions of the TRO and the sale of Receivership Entities' vehicles, office furniture, and equipment. Disbursements were $502,087.40, primarily comprised of disbursements made pursuant to the Order entered August 14, 2019 (ECF No. 58) which, among other things, authorized the Receiver to pay the net proceeds of consigned vehicles sold before entry of the TRO ($210,435), the payment of the Receiver and professional fees authorized by the Court (ECF No. 72), vehicle-related costs (loan payoff, vehicle repairs, towing, and title expenses, $29,419.31), commissions and expenses paid for the sale of vehicles ($12,340), utilities for 3 Studebaker site ($15,395.21). In aggregate, the receivership bank accounts have a current balance of $3,219,312.52.

Dated: January 14, 2020                         MCNAMARA SMITH LLP

By:   /s/ Edward Chang
      Edward Chang
      *Attorneys for Receiver,*
      *Thomas W. McNamara*

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th of January, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all participants in the case who are registered CM/ECF users.

/s/ Edward Chang
Edward Chang
*Attorney for Receiver,*
*Thomas W. McNamara*