ALDEN F. ABBOTT
General Counsel
K. MICHELLE GRAJALES
mgrajales@ftc.gov
SAMUEL F. JACOBSON
sjacobson@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW
Mail Stop: CC-10232
Washington, DC  20580
(202) 326-3172

JOHN D. JACOBS, Cal. Bar No. 134154
Local Counsel
jjacobs@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Ste. 400
Los Angeles, CA 90024
Tel: (310) 824-4343; Fax: (310) 824-4380

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) Case No. **SACV 19-1333JVS (KESx)** |
| | ) |
| Plaintiff, | ) **AMENDED FINAL JUDGMENT** |
| | ) |
| vs. | ) |
| | ) |
| ELEGANT SOLUTIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

Having considered the objections of defendant Elegant Solutions, Inc. *et al.* (collectively "Elegant Solutions") (Docket No. 189) and the Federal Trade Commission' response thereto (Docket No. 190), the Court now enters its Amended Final Judgment.[1]

Plaintiff, the Federal Trade Commission, filed its Complaint for a permanent injunction and other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108.  On motion by the FTC, on July 8, 2019, the Court entered an ex parte temporary restraining order with asset freeze, appointment of a Receiver, and other equitable relief.  Dkt. No. 23.  On July 17, 2019, the Court entered a stipulated preliminary injunction continuing the terms of the preliminary injunction.  Dkt. No. 52.  On March 9, 2020, the FTC moved for summary judgment as to all Defendants on all counts of the Complaint.

The Court, having considered the arguments, memoranda, and exhibits in support of the FTC's Motion for Summary Judgment, and all other pleadings and files in this action, hereby **GRANTS** the FTC's motion.

THEREFORE, IT IS ORDERED as follows:

### FINDINGS

1.  This Court has jurisdiction over this matter.

2.  Venue in this District is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d).

---

1 The Court's usual practice is to wait seven days for objections where a proposed judgment is not endorsed as to form by the opposing party.  Apparently, there was some confusion in this case.  (See Application, Docket No. 185.)  To ensure due process, the Court granted Elegant Solutions' application for file objections.  (Docket No. 188.)  Those objections have been fully considered.

3.  The Complaint charges that Defendants participated in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.  The Complaint seeks both permanent injunctive relief and equitable monetary relief for Defendants' deceptive and unlawful acts or practices as alleged therein.

4.  The FTC has authority to seek the relief it has requested, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57(b) and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108.

5.  The activities of Defendants are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6.  The Complaint states a claim on which relief can be granted against Defendants.

7.  The allegations in the Complaint and the evidence supporting them establish that Defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45, and the TSR, 16 C.F.R. Part 310, in connection with the telemarketing of student loan debt relief services.

8.  In numerous instances, Defendants, in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, have represented, directly or indirectly, expressly or by implication, that:

    a.    Consumers who purchased Defendants' debt relief services would be enrolled in a repayment plan that would reduce their monthly payments to a lower, specific amount or have their loan balances forgiven in whole or in part;

    b.    Most or all of consumers' monthly payments to Defendants would be applied toward consumers' student loans; or

    c.    Defendants would assume responsibility for the servicing of consumers' student loans.

In fact, in numerous instances in which Defendants have made these representations, such representations were false or not substantiated at the time Defendants made them.  Therefore, the making of these representations constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

9.  In numerous instances, in connection with the telemarketing of student loan debt relief services, Defendants have requested or received payment of a fee or consideration for debt relief services before: (a) Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor, in violation of Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i).

10.  In numerous instances, Defendants, in connection with the telemarketing of student loan debt relief services, have misrepresented, directly or indirectly, expressly or by implication, material aspects of their debt relief services, including but not limited to that: (a) Consumers who purchased Defendants' debt relief services would be enrolled in a repayment plan that would reduce their monthly payments to a lower, specific amount or have their loan balances forgiven in whole or in part; (b) Most or all of consumers' monthly payments to Defendants would be applied toward consumers' student loans; or (c) Defendants would assume responsibility for the servicing of consumers' student loans, in violation of Section 310.3(a)(2)(x) of the TSR, 16 C.F.R. § 310.3(a)(2)(x).

11.  Defendants received revenues of at least $31,140,943.00 derived unlawfully from payments by consumers as a direct result of Defendants' violations of Section 5 of the FTC Act and the TSR.  Of those revenues, they have refunded approximately $408,089.00, and paid approximately $3,147,885.00 to

consumers' student loan servicers.  Defendants have therefore caused consumer injury in the amount of at least $27,584,969.00.

12.  Defendants Elegant Solutions, Inc., Trend Capital Ltd., Dark Island Industries, Inc., Heritage Asset Management, Inc., and Tribune Management, Inc. (collectively, "Corporate Defendants") operated as a common enterprise while engaging in the unlawful acts and practices set forth in Findings 7 to 11 above. Defendants have conducted the business practices described above through an interrelated network of companies that have common ownership or officers, business functions, employees, office locations, and that commingled funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices set forth in Findings 7 to 11 above.

13.  At all times material to the Complaint, Defendants Mazen Radwan, Rima Radwan, Labiba Velazquez, and Dean Robbins (collectively, "Individual Defendants") formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.  Individual Defendants also each had actual knowledge of the acts and practices set forth in Findings 7 to 11 above. Thus, Individual Defendants are each jointly and severally liable for monetary and injunctive relief.

14.  Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57(b), empower this Court to issue injunctive and other relief against violations of the FTC Act and, in the exercise of its equitable jurisdiction, to award redress and restitution to remedy the injury to consumers, to order disgorgement of profits resulting from Defendants' unlawful acts or practices, and issue other ancillary equitable relief.

15.  This Court is persuaded that the danger of future violations by Defendants justifies the issuance of injunctive relief.  Specifically, it is proper in this case to issue an injunction that:  (a) permanently bans Defendants from advertising,

marketing, promoting, offering for sale, selling, or Assisting Others in the
advertising, marketing, promoting, offering for sale, or selling, of any Secured or
Unsecured Debt Relief Product or Service; (b) permanently bans Defendants from
participating or Assisting Others in Telemarketing, whether directly or through an
intermediary; (c) prohibits misrepresenting, or Assisting Others in misrepresenting,
expressly or by implication, any fact material to a consumer's decision to purchase
a Financial Product or Service; (d) prohibits making any unsubstantiated
representation or Assisting Others in making any unsubstantiated representation,
expressly or by implication, about the benefits, performance, or efficacy of any
product or service; and (e) provides such other ancillary relief as is necessary to
assist the FTC and the Court in monitoring Defendants' compliance with such
injunctive relief.

16.  As set forth above, Defendants have unlawfully derived revenues of
$27,584,969.00 from payments by consumers as a direct result of Defendants'
violations of Section 5 of the FTC Act and the TSR.  It is therefore proper in this
case to enter a monetary judgment of $27,584,969.00 against Defendants, jointly
and severally, as equitable monetary relief in the form of restitution, rescission of
contracts, and disgorgement for their violations of the FTC Act and the TSR.

17.  This action and the relief awarded herein are in addition to, and not in lieu
of, other remedies as may be provided by law, including both civil and criminal
remedies.

18.  Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this
Order are binding upon each Defendant, their successors and assigns, and their
officers, agents, employees and attorneys, and upon those persons or entities in
active concert or participation with them who receive actual notice of this Order by
personal service or otherwise.

19.  Entry of this Order is in the public interest.
.

**DEFINITIONS**

For purposes of this Order, the following definitions apply:

A.    "**Assisting Others**" includes:

1.    performing customer service functions, including receiving or responding to consumer complaints;

2.    formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.    formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4.    providing names of, or assisting in the generation of, potential customers;

5.    performing marketing, billing, or payment services of any kind; or

6.    acting or serving as an owner, officer, director, manager, or principal of any entity.

B.    "**Corporate Defendants**" means Elegant Solutions, Inc., also doing business as Federal Direct Group, Trend Capital Ltd., also doing business as Mission Hills Federal, Dark Island Industries, Inc., also doing business as Federal Direct Group and Cosmopolitan Funding Inc., Heritage Asset Management, Inc., also doing business as National Secure Processing, Tribune Management, Inc., also doing business as the Student Loan Group, and each of their subsidiaries, affiliates, successors, and assigns.

C.    "**Defendants**" means all of the Corporate Defendants and Mazen Radwan aka Michael or Mike Radwan, Rima Radwan, Labiba Velazquez aka Labiba Radwan, and Dean Robbins, individually, collectively, or in any combination.

D.    "**Financial Product or Service**" means any product, service, plan, or program represented, expressly or by implication, to:

1.    provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

2.    provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

3.    improve, repair, or arrange to improve or repair, any consumer's credit record, credit history, or credit rating; or

4.    provide advice or assistance to improve any consumer's credit record, credit history, or credit rating.

E.    "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

F.    "**Receiver**" means Thomas W. McNamara.

G.    "**Receivership Entity**" means the Corporate Defendants, as well as any other business related to Defendants' mortgage assistance relief services business and which the Receiver has reason to believe is owned or controlled in whole or in part by any Defendant, including but not limited to any other mortgage assistance relief services business operated by the Individual Defendants.

H.    "**Secured or Unsecured Debt Relief Product or Service**" means:

1.    With respect to any mortgage, loan, debt, or obligation between a person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

a.    stop, prevent, or postpone any mortgage or deed of foreclosure sale for a person's dwelling, any other sale of collateral, any repossession of a person's dwelling or other collateral, or otherwise save a person's dwelling or other collateral from foreclosure or repossession;

b.    negotiate, obtain, or arrange a modification, or renegotiate,

-8-

settle, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a person to a secured or unsecured creditor or debt collector;

        c.    obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

        d.    negotiate, obtain, or arrange any extension of the period of time within which a person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

        e.    obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

        f.    negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a person's application for the mortgage, loan, debt, or obligation.

        2.    With respect to any loan, debt, or obligation between a person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

        a.    repay one or more unsecured loans, debts, or obligations; or

        b.    combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

I.     "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

## I.

## BAN ON SECURED AND UNSECURED
## DEBT RELIEF PRODUCTS AND SERVICES

IT IS ORDERED that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, selling, or Assisting Others in the advertising, marketing, promoting, offering for sale, or selling, of any Secured or Unsecured Debt Relief Product or Service.

## II.

## BAN ON TELEMARKETING

IT IS FURTHER ORDERED that Defendants are permanently restrained and enjoined from participating or Assisting Others in Telemarketing, whether directly or through an intermediary.

## III.

## PROHIBITION AGAINST MISREPRESENTATIONS
## RELATING TO FINANCIAL PRODUCTS AND SERVICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Financial Product or Service, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

A.     the terms or rates that are available for any loan or other extension of credit, including:

1.      closing costs or other fees;

2.      the payment schedule, monthly payment amount(s), any balloon payment, or other payment terms;

3.      the interest rate(s), annual percentage rate(s), or finance charge(s), and whether they are fixed or adjustable;

4.      the loan amount, credit amount, draw amount, or outstanding balance; the loan term, draw period, or maturity; or any other term of credit;

5.      the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties;

6.      whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; or

7.      that the credit does not have a prepayment penalty or whether subsequent refinancing may trigger a prepayment penalty and/or other fees;

B.      the ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing current, accurate negative information from the consumer's credit record or history;

C.      that a consumer will receive legal representation; or

D.      any other fact material to consumers concerning any good or service, such as:  the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## IV.

## PROHIBITION AGAINST MISREPRESENTATIONS
## RELATING TO ANY PRODUCTS OR SERVICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation

with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any product, service, plan, or program, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

A.     any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

B.     that any Person is affiliated with, endorsed or approved by, or otherwise connected to any other Person; government entity; public, non-profit, or other non-commercial program; or any other program;

C.     the nature, expertise, position, or job title of any Person who provides any product, service, plan, or program; or

D.     any other fact material to consumers concerning any good or service, such as:  the total costs; any restrictions, limitations, or conditions; or any aspect of its performance, efficacy, nature, or central characteristics.

## V.

## PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any product or service, are permanently restrained and enjoined from making any representation or Assisting Others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading, and, at the time such representation is made, that Defendant possesses and relies upon competent and reliable evidence that is sufficient in

quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## VI.

## MONETARY JUDGMENT AND PARTIAL SUSPENSION

IT IS FURTHER ORDERED that:

A.     Judgment in the amount of Twenty-Seven Million, Five Hundred Eighty-Four Thousand, Nine Hundred Sixty-Nine Dollars ($27,584,969.00) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.     The monetary judgment set forth in this Section VI is enforceable against any asset, real or personal, whether located within the United States or outside the United States, owned jointly or singly by, on behalf of, for the benefit of, in trust by or for, or as a deposit for future goods or services to be provided to, any Defendant, whether held as tenants in common, joint tenants with or without the right of survivorship, tenants by the entirety, and/or community property.

C.     Any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or Person, whether located within the United States or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any Receivership Entity, whether real or personal, whether located within the United States or outside the United States, shall, within ten (10) business days from receipt of a copy of this Order, turn over such accounts or assets to the Receiver or his designated agent.

D.     In partial satisfaction of the judgment against Defendants in Section VI.A, any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or person, whether located within the United States or outside the United States, that holds, controls, or maintains accounts or assets of, on behalf of, or for the benefit of, any Individual Defendant, whether real

or personal, whether located within the United States or outside the United States, shall, within ten (10) business days from receipt of a copy of this Order, turn over such account or asset to the FTC or its designated agent, including, but not limited to:

1. Wescom shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx9841 in the name of Dean Robbins;

2. Wescom shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx5924 in the name of Dean Robbins;

3. Orange County's Credit Union shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in checking and savings account numbers xxxx8000 in the name of Mazen Radwan;

4. Orange County's Credit Union shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx3156 in the name of Mazen Radwan;

5. CalWest Bank shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx3941 in the name of Rima Radwan;

6. JP Morgan Chase shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx7434 in the name of Mazen Radwan;

7. JP Morgan Chase shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx7906 in the name of Mazen Radwan;

8.  JP Morgan Chase shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx1828 in the name of Rima Radwan;

9.  JP Morgan Chase shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxx5760 in the name of Dean Robbins;

10. Edward Jones shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number xxxxxx4015 in the name of Dean Robbins;

11. Computershare shall, within ten (10) business days of receipt of a copy of this Order, liquidate all holdings in account number xxxx5169 in the name of Rima Radwan and transfer the proceeds of such liquidation to the FTC or its designated agent; and

12. Golden 1 Credit Union shall, within ten (10) business days of receipt of a copy of this Order, transfer to the FTC or its designated agent all holdings in account number  xxx9685 in the name of Dean Robbins.

E.    The asset freeze is modified to permit the transfers identified in this Section. Upon completion of those transfers, the asset freeze as to Defendants is dissolved.

F.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

G.    All money paid to the FTC pursuant to this Order may be deposited into a fund administered by the FTC or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the FTC may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably

related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.

## VII.

## CONTINUATION OF RECEIVERSHIP

**IT IS FURTHER ORDERED** that Thomas McNamara, Esq., shall continue as a permanent receiver over the Receivership Entities with full powers of a permanent receiver, including but not limited to those powers set forth in the Preliminary Injunction (ECF No. 52), and including full liquidation powers.  The Receiver is directed to wind up the Receivership Entities and liquidate all assets within 180 days after entry of this Order.  Any party or the Receiver may request that the Court extend the Receiver's term for good cause.  Upon termination of the receivership and final payment to the Receiver of all approved fees, costs, and expenses, the Receiver shall turn over to the FTC or its designated agent all remaining assets in the receivership estate.

## VIII.

## CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, attorneys, and all other Persons or entities in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.      disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, FSA ID, other identifying information, or any data that enables access to a customer's account (including a student loan account, credit card, bank account, or other

financial account), that any Defendant obtained prior to entry of this Order in connection with the marketing or sale of secured or unsecured debt relief products or services; and

C.    failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## IX.

## COOPERATION

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Defendants must provide truthful and complete information, evidence, and testimony.  Defendants must appear and must cause Defendants' officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## X.

## ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, Defendants Mazen Radwan, Rima
Radwan, Labiba Velazquez, and Dean Robbins for any business that he or she,
individually or collectively with any other Defendant, is the majority owner or
controls directly or indirectly, and Corporate Defendants must deliver a copy of
this Order to: (1) all principals, officers, directors, and LLC managers and
members; (2) all employees having managerial responsibilities for Financial
Products or Services, and all agents and representatives who participate in
Financial Products or Services; and (3) any business entity resulting from any
change in structure as set forth in the Section titled Compliance Reporting.
Delivery must occur within 7 days of entry of this Order for current personnel.  For
all others, delivery must occur before they assume their responsibilities.

C.     Defendants must obtain, within 30 days, a signed and dated
acknowledgment of receipt of this Order from each individual or entity to which
Defendants delivered a copy of this Order.

## XI.

## COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to
the Commission:

A.     One year after entry of this Order, each Defendant must submit a compliance
report, sworn under penalty of perjury:

    1.     Each Defendant must:

        (a) identify the primary physical, postal, and email address and
telephone number, as designated points of contact, which
representatives of the Commission may use to communicate with that
Defendant;

        (b) identify all of that Defendant's businesses by all of their names,
telephone numbers, and physical, postal, email, and Internet
addresses;

(c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendants Mazen Radwan, Rima Radwan, Labiba Velazquez and Dean Robbins must describe if he or she knows or should know due to his or her own involvement);

(d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

(e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Defendants Mazen Radwan, Rima Radwan, Labiba Velazquez and Dean Robbins must each:

(a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences;

(b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and

(c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:

(a) any designated point of contact; or

(b) the structure of any Defendant or any entity that any Defendant has any ownership interest in or controls directly or indirectly that

may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Defendants Mazen Radwan, Rima Radwan, Labiba Velazquez and Dean Robbins must report any change in (a) name, including alias or fictional name, or residence address; or (b) title or role in any business activity, including any business for which he or she performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  FTC v. Elegant Solutions, *et al.*, X190036.

## XII.
## RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, each Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    accounting records showing the revenues from all goods or services sold;

B.    personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job titles or positions; dates of service; and (if applicable) the reason for termination;

C.    records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response thereto;

D.    all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.    a copy of each unique advertisement or other marketing material.

## XIII.

## COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the FTC, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the FTC is authorized to communicate directly with Defendants.  Defendants must permit representatives of the

Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with any Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defendants Mazen Radwan, Rima Radwan, Labiba Velzquez, or Dean Robbins, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15, U.S.C. § 1681(b)(a)(1).

## XV.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

The Court expressly declines to stay this Amended Final Judgment.  The date for performance of any obligation under this Amended Final Judgment shall be determined as of the date of the Amended Final Judgment.

**IT IS SO ORDERED:**

**DATED:** July 24, 2020

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE